UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| NATHAN SAMONS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 22-249-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| 84 LUMBER COMPANY, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Nathan Samons filed this action in the Fayette Circuit Court, alleging that 84 Lumber Company wrongfully terminated him based on his refusal to get a COVID-19 vaccination, a decision he contends was based on his sincerely held religious beliefs. Defendant 84 Lumber removed the matter to this Court based on federal question and diversity jurisdiction. *See* 28 U.S.C. §§ 1331, 1332. 84 Lumber has now filed a motion to dismiss the Complaint, compel arbitration, and award it attorney's fees and costs.

The Court will grant 84 Lumber's motion to dismiss and compel arbitration because Samons entered into a written agreement to arbitrate all employment disputes, including those arising during any future term of employment. He entered into this agreement when he was hired on May 9, 2014. Although the case presents is a close question, the Court cannot determine that the plaintiff acted vexatiously in filing suit rather than submitting his claims to arbitration, Therefore, the Court declines to award the defendant attorney's fees and costs.

## I.      Background

84 Lumber hired Samons as a Yard Associate on May 9, 2014.  He signed an "84 Associate Voluntary Dispute Resolution Program Agreement" ("Agreement" or "DRP Agreement") on that date, which provides as follows:

> **ASSOCIATE ACKNOWLEDGES THAT HE OR SHE HAS CAREFULLY RECEIVED AND READ 84'S VOLUNTARY DISPUTE RESOLUTION PROGRAM AND ARBITRATRION PROCEDURES (A COPY OF WHICH IS ATTACHED AND SET FORTH IN THE 84 ASSOCIATE HANDBOOK), THAT HE OR SHE UNDERSTANDS THEIR TERMS, THAT ALL UNDERSTANDINGS BETWEEN THE ASSOCIATE AND 84 RELATING TO THE SUBJECTS COVERED IN THIS AGREEMENT ARE CONTAINED IN IT, AND THAT HE OR SHE HAS ENTERED INTO THIS AGREEMENT VOLUNTARILY AND NOT IN RELIANCE ON ANY PROMISES OR REPRESENTATIONS BY 84 OTHER THAN THOSE CONTAINED IN THIS AGREEMENT ITSELF. WITHOUT LIMITING THE FOREGOING, ASSOCIATE FURTHER ACKNOWLEDGES AND AGREES THAT PURSUANT TO THIS AGREEEMENT, ASSOCIATE IS GIVING UP ANY RIGHT HE OR SHE MIGHT POSSESS TO HAVE DISPUTED CLAIMS LITIGATED IN A COURT OR JURY TRIAL.**

> **ASSOCIATE FURTHER ACKNOWLEDGES THAT HE OR SHE HAS HAD A REASONABLE PERIOD OF TIME TO REVIEW AND CONSIDER THIS AGREEMENT BEFORE SIGNING IT AND THAT HE OR SHE HAS HAD AN OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH HIS OR HER PERSONAL LEGAL COUNSEL AND HAS USED THAT OPPORTUNITY TO THE EXTENT HE OR SHE WISHES.**

[Record No. 8-1, p. 1]

The attached Dispute Resolution Policy states that "a 'Dispute' covered by the Agreement includes not only claims, disputes, or issues that relate to or arise out of Associate's current employment with the Company, but also any claim, dispute or issues that relate to or arise out of any subsequent employment of Associate by the Company, should Associate's current employment with the Company be terminated for any reason."  *Id.* p. 5.

The Policy also indicates that the Agreement survives the employer-employee relationship and can be modified or revoked only by agreement of the parties to a separate, written agreement to arbitrate employment disputes or by a writing signed by both parties that references the Agreement and specifically states an intent to modify or revoke the Agreement. *Id.* p. 7.

Samons voluntarily resigned his employment on August 15, 2014, to pursue additional education. He was rehired (apparently as a Yard Associated) on May 18, 2015. In December 2015, Samons was promoted to the position of Co-Manager. At that time, he began managing the 84 Lumber Store in Lexington, Kentucky. Samons was not reminded of the arbitration agreement or asked to sign a new arbitration agreement when he was rehired or promoted in 2015.

During his employment as Co-Manager, Samons received an e-mail from 84 Lumber's President, Maggie Hardy-Knox, stating that it was her goal for all employees to be vaccinated by October 31, 2021. Along with this email, Hardy-Knox provided a copy of 84 Lumber's Vaccine Policy, which asked all employees to be vaccinated by October 31, unless the employee was granted a reasonable accommodation. Samons sent a religious accommodation request to Human Resources outlining the reasons for his request, along with a letter from his pastor verifying his beliefs. On October 8, 2021, Human Resources employee Heather Kovacs informed Samons that his religious exemption was not accepted because it would place an undue hardship on the company. Samons did not receive a vaccine and was terminated on November 1, 2021.

Samons filed this lawsuit in the Fayette Circuit Court on August 18, 2022, alleging that the defendant discriminated against him based on his religious beliefs. 84 Lumber

removed the matter to this Court, arguing that the Complaint should be dismissed because Samons' claims are subject to arbitration based on the DRP Agreement.

## II.    Standard of Review

The Federal Arbitration Act ("FAA") provides that a party aggrieved by another party's refusal to arbitrate pursuant to a written agreement may petition a United States district court for an order directing that arbitration proceed in the manner provided for in the agreement.  9 U.S.C. § 3.   The FAA also states that "[t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration."  *Id.*  The Federal Rules of Civil Procedure fill in procedural gaps in the FAA, governing proceedings related to arbitration to the extent they are applicable and comport with the FAA.  *Boykin v. Family Dollar Stores of Mich., LLC*, 3 F.4th 832, 837 (6th Cir. 2021) (citing Fed. R. Civ. P. 81(a)(6)(B)).

84 Lumber has filed a motion to dismiss pursuant to Rule 12(b)(6), which allows for dismissal when the complaint fails to state a claim upon which relief can be granted.  District courts differ on which standard of review should apply when considering whether a valid agreement to arbitrate exists.  *See BLC Lexington, LLC v. Craig*, 2020 WL 4721240, at *4 (E.D. Ky. Aug. 13, 2020) (citing *Powers v. Charles River Labs., Inc.*, 2017 WL 4324942, at *4 (E.D. Mich. Sept. 29, 2017) ("Federal courts analyze motions to compel arbitration under different procedural standards, including Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(6) for failure to state a claim, and Fed. R. Civ. P. 56 for summary judgment, depending upon the facts and posture of the case.").

- 4 -

In this case, it makes little difference what label the Court applies to its analysis because the facts are not in dispute and the only evidence being considered is the arbitration agreement itself.  Samons has not stated any objection to treating the motion as one to dismiss under 12(b)(6), nor has he claimed a need for any discovery.

### III.    Discussion

"Mandatory arbitration agreements in the employment context are governed by the Federal Arbitration Act, which evidences a strong policy preference in favor of arbitration." *Mazera v. Varsity Ford Mgmt. Servs., LLC*, 565 F.3d 997, 1001 (6th Cir. 2009) (citing *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001)).  Nevertheless, "[a]rbitration is a matter of contract and . . . a party cannot be compelled to arbitrate that which it has not agreed to arbitrate."  *Amalgamated Clothing Workers of Am., AFL-CIO v. Ironall Factories Co.*, 385 F.2d 586, 590 (6th Cir. 1967).  When considering a motion to compel arbitration, the Court must make four determinations: (i) whether the parties agreed to arbitrate; (ii) the scope of that agreement; (iii) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable; and (iv) if the court concludes that some, but not all claims are subject to arbitration, it must determine whether to stay to remainder of the proceedings pending arbitration.  *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

In addressing whether the parties agreed to arbitrate, courts should "apply ordinary state-law principles that govern the formation of contracts."  *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  Both parties agree that Kentucky law applies.

Rules of contractual interpretation are designed to effectuate the intent of the parties.  *Kelvin Corp. v. Vega*, 2003 WL 21258242, at *2 (Ky. 2003).  When the language of a contract is unambiguous, the parties' intent must be discerned from the contractual language.

- 5 -

*Mitsui Sumitomo Ins. USA, Inc. v. Denham-Blythe Co., Inc.*, 2019 WL 1938791, at *3 (E.D. Ky. May 1, 2019) (*Luttrell v. Cooper Indus., Inc.*, 60 F. Supp. 2d 629, 631 (E.D. Ky. Oct. 27, 1998)).  Samons does not dispute that unambiguous language provides that the Agreement survives the employer-employee relationship and requires him to arbitrate disputes that relate to or arise out of his 2014 employment with 84 Lumber and any subsequent term of employment thereafter.  Instead, he asserts that the Agreement is unenforceable as written.

First, Samons contends that it "attempts to be a 'perpetual contract,'" which he says is impermissible under Kentucky law.  He relies on *Brownsboro Road Rest., Inc. v. Jerrico, Inc.*, 674 S.W.2d 40 (Ky. Ct. App. 1984), which involved a restaurant franchise agreement that had no end date.  Jerrico, desiring to be released from the agreement, filed an action in the Jefferson Circuit Court, seeking a declaration that the agreement was "terminable at will" or "terminable upon reasonable notice."  The Kentucky Court of Appeals concluded that summary judgment in favor of Jerrico was proper, stating: "[o]ur state is committed to the rule that where a contract covers no definite period, it may be terminated by either party at will."  *Id.* at 41 (citing *Kirby v. Scroggins*, 246 S.W.2d 453 (Ky. 1952); *Duff v. P.T. Allen Lumber Co.*, 220 S.W.2d 981 (Ky. 1949)).

The dearth of caselaw that exists has applied this rule in the general context of "business contracts," observing that the rule against perpetual contracts is "especially applicable to distributorship contracts."  *Hayes v. Equitable Energy Resources Co.*, 266 F.3d 560, 570 (6th Cir. 2001) (citing *Elec. & Water Plant Bd.*, 805 S.W.2d at 143); *Mid-Southern Toyota Ltd. v. Bug's Imports, Inc.,* 453 S.W.2d 544, 549 (Ky. 1970).  Samons has not identified any authority extending this doctrine to the employment context, let alone to an agreement to arbitrate.  *But see Bowden v. Delta T. Corp.*, 2006 WL 34123007, at *6 (E.D.

Ky. Nov. 27, 2006) (observing the "well established proposition" that "a broadly worded arbitration clause may reach conduct that occurs after the termination of the contract in which the arbitration clause was embedded").

Other courts that have examined this issue have upheld similar arbitration agreements, concluding that "the survival clause unambiguously reflected the parties' intent that the arbitration agreement would survive any break in Plaintiff's employment." *Gillian v. Cowabunga, Inc.*, 2018 WL 2431345, at *2-3 (N.D. Ala. May 30, 2018) (cleaned up) (citing *Anderson v. Waffle House, Inc.*, 920 F. Supp. 2d 685, 693 (E.D. La. 2013); *Nelson v. Carl Black Chevrolet of Nashville, LLC*, 2017 WL 3298327, at *5 (M.D. Tenn. Aug. 2, 2017)). Unlike the "perpetual contract" cases upon which Samons relies, the DRP Agreement's express language demonstrates the parties' intent for the agreement to survive termination of Samons' employment and subsequent reemployment. Given this clear expression of the parties' intent, particularly in light of the strong presumption in favor of arbitration, Samons has not shown that the arbitration contract is unenforceable under Kentucky law. *See Stout*, 228 F.3d at 714.

Samons' second argument is that the arbitration agreement "cannot constitute a contract that would govern subsequent terms of employment as no new consideration was given in exchange for" forfeiture of his right to a jury trial. [Record No. 8, p. 6] This argument seems to conflate the arbitration agreement with any employment agreements Samons entered into with 84 Lumber. The arbitration agreement states, in bold, that it is not an employment agreement. [Record No. 8-1, p. 7] The arbitration agreement also recites the consideration for that contract as follows:

> Each Party's promise to resolve Disputes by arbitration in accordance with the provisions of this Agreement, rather than through the courts, is consideration for the other Party's like promise. In addition, Associate's employment by the Company is *independent* consideration for Associate's agreement to the terms of the 84 Voluntary Dispute Resolution Program.

*Id.* at 6 (emphasis added). The parties' May 9, 2014, exchange of mutual promises constitutes adequate consideration to arbitrate claims arising out of subsequent employment. *See Energy Homes, Div. of S. Energy Homes, Inc. v. Peay*, 406 S.W.3d 828, 835 (Ky. 2013) ("[A]n arbitration clause requiring both parties to submit equally to arbitration constitutes adequate consideration."). Samons has not explained why 84 Lumber would be required to provide new consideration in 2015 for an agreement that had been in place since May 2014.

Next, Samons argues that, even if the arbitration agreement was binding, arbitration should not be compelled under the facts of this case. However, he largely rehashes previous portions of his motion by arguing that he did not agree to arbitrate disputes concerning religious discrimination when he returned to work or when he was promoted in 2015. But as the Court has already explained, Samons agreed to arbitrate the disputes in 2014, despite his obvious displeasure with that outcome now. *See Clark v. Brewer*, 329 S.W.2d 384, 387 (Ky. 1959) (observing that one who signs a contract is presumed to know its contents). To the extent Samons suggests the arbitration agreement is insufficiently broad to cover his religious discrimination claim, claims based on religious discrimination are explicitly included under the provision titled "covered disputes." [Record No. 8-1, p. 5]

The only federal claim Samons asserts is a claim of unlawful discrimination on the basis of religion in violation of Title VII of the Civil Rights Act. [Record No. 1-1, p. 10] It is well established within the Sixth Circuit that Congress did not intend to exclude Title VII claims from arbitration. *See Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305, 309-10 (6th

Cir. 1991). Samons makes no argument that his remaining claim for negligence is excluded from arbitration.

Having determined that arbitration is compelled on both claims pursuant to the parties' agreement, dismissal is appropriate. *See BBS Techs., Inc. v. Remington Arms Co.*, 2005 WL 3132307 (E.D. Ky. 2005).

### IV.    Attorney's Fees and Costs

The defendant seeks an award of attorney's fees and costs pursuant to 28 U.S.C. § 1927, which provides, "any attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The Sixth Circuit has defined "vexatiously multiplying proceedings" to include conduct where "an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of non-frivolous claims." *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986). Section 1927 sanctions also may be appropriate when an attorney has engaged in conduct that, "from an objective standpoint, falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." *Holmes v. City of Massillon*, 78 F.2d 1041, 1049 (6th Cir. 1996).

The defendant provides evidence of the parties' communications in support of its request for fees. Samons' attorney emailed a letter to Maggie Hardy-Knox on March 28, 2022, advising her of Samons' intention to file a lawsuit for wrongful termination. The letter also included a settlement demand of $100,000. [Record No. 5-2] 84 Lumber's counsel

responded on March 31, 2022, denying Samons' allegations and stating that Samons was required to arbitrate such claims pursuant to the DRP Agreement he executed at the inception of his employment. [Record No. 5-3] Defense counsel further notified plaintiff's counsel that, should Samons institute any legal action in court, 84 Lumber would move to compel arbitration and seek fees and costs for having to do so. Counsel also attached a copy of the DRP Agreement, dated May 9, 2014, bearing Samons' signature.

Plaintiff's counsel responded by letter dated May 16, 2022, stating that the Agreement was unenforceable because Samons did not sign a new arbitration agreement when he was rehired in 2015. Counsel further advised that Samons would file suit if 84 Lumber declined to attempt to resolve the matter within 15 days. Defendant's counsel responded by letter two days later, insisting that the Agreement was enforceable based on its plain language. Counsel also provided the authorities cited herein in which various federal district courts have upheld similar contracts in which the parties' agreement to arbitrate survived termination of the plaintiff's employment. [Record No. 5-5, p. 4]

Samons filed suit in the Fayette County Circuit Court on August 18, 2022. Defendant's counsel emailed Samons' counsel on September 13, 2022, stating: "you filed this litigation in court notwithstanding the greater weight of authority on this issue, which we set forth in our correspondence, dated May 18, 2022, which establishes that Mr. Samons['] arbitration agreement is enforceable." [Record No. 5-6, p. 2] Defense counsel advised that if the plaintiff did not withdraw the Complaint and refile the matter in arbitration by September 16, 2022, 84 Lumber would file a motion to compel arbitration and seek sanctions, fees, and costs.

Sanctions under § 1927 require "a showing of something less than subjective bad faith, but something more than negligence or incompetence." *Rentz v. Dynasty Apparel Indus., Inc.*, 556 F.3d 389, 396 (6th Cir. 2009). The Court concludes that sanctions are not appropriate in this case. It is true that the plain language of the contract requires the claims to be submitted to arbitration and Samons' repeated assertions to the contrary are plainly erroneous. However, he raised a novel (albeit unsuccessful) argument that the arbitration agreement constitutes an impermissible contract in perpetuity under Kentucky law. And while Samons has not cited *any* caselaw repudiating an arbitration agreement for the reasons at issue here, there does not appear to be any controlling authority on the issue. Accordingly, the undersigned concludes that the plaintiff's conduct does not rise to a level that warrants sanctions under § 1927.

In summary, this is a case in which the equities favor the plaintiff, but the law does not provide the necessary support. Based on the foregoing, it is hereby

**ORDERED** as follows:

1.     Defendant 84 Lumber's motion to dismiss the Complaint and compel arbitration [Record No. 5] is **GRANTED**.

2.     The defendant's request for attorney's fees and costs is **DENIED**.

3.     This matter is **DISMISSED**, without prejudice, and **STRICKEN** from the docket.

Dated: October 28, 2022.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky